In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3504

KHEM BISSESSUR,

*Plaintiff-Appellant*,

*v.*

THE INDIANA UNIVERSITY BOARD OF TRUSTEES, ET AL.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 07 CV 01290—**Sarah Evans Barker**, *Judge*.

ARGUED FEBRUARY 25, 2009—DECIDED SEPTEMBER 11, 2009

Before FLAUM, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Khem Bissessur was expelled from the Indiana University School of Optometry after receiving several sub-par grades and failing a clinical rotation. He alleges that he had a protected property interest in a continuing education at the University, which was established in an implied contract between the parties. It is the University's violation of his entitlement to a continuing education, he asserts, that forms

the basis for several constitutional claims against the University and its employees. His complaint, however, fails to identify any facts that give the defendants adequate notice of the basis for these claims. The complaint fails to state that the University made any promises to Bissessur or how it entered into a contract with him, implied or otherwise. Therefore, the district court dismissed his complaint for failure to state a claim, and we affirm.

## I. BACKGROUND

Khem Bissessur is a former graduate student at the Indiana University School of Optometry. Bissessur alleges that in December 2004, a professor refused to let him take an exam, resulting in him receiving a grade of "incomplete" for the course. That semester, he also received two grades of D+ based on allegedly arbitrary reasons. As a result of these events, the University refused to allow Bissessur to begin his clinical rotations the following semester. After he was allowed to begin, he received a failing grade in one rotation. This failure led to his dismissal from the University, which caused Bissessur to file suit against the University's Board of Trustees and several of its employees.

Bissessur's complaint generally alleges that his professors arbitrarily assigned his grades, that he did not receive proper feedback from his professors or the University regarding his academic progress, and that the University dismissed him without proper notice or a hearing. The complaint contains claims for violations of

Bissessur's rights to substantive due process, procedural due process, and equal protection, as well as a claim for breach of implied contract. The district court dismissed this case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Bissessur appeals.

## II. ANALYSIS

### A. Bissessur's Complaint Fails to Allege Sufficient Facts

The district court dismissed all of Bissessur's claims pursuant to the defendants' Rule 12(b)(6) motion. It found that the defendants had qualified immunity with respect to Bissessur's claims for monetary damages. With respect to Bissessur's request for prospective injunctive relief (reinstatement to the University), the district court found that Bissessur did not state a claim upon which relief could be granted. At the heart of its reasoning, the district court found that all of Bissessur's claims failed because he did not establish that he had a cognizable protected interest in a continuing education at Indiana University.[1]

---

[1] The one exception is Bissessur's equal protection claim, which the district court properly dismissed because Bissessur, among other things, failed to: (1) allege that he was a member of a protected class; or (2) allege that someone similarly situated was treated differently. *See McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (citation and quotation omitted).

A graduate student does not have a federal constitutional right to a continued graduate education. *See Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008). That said, given that the "basic legal relation between a student and a private university or college is contractual in nature," a student may establish that an implied contract existed between himself and the university that entitled the student to a specific right, such as the right to a continuing education or the right not to be suspended without good cause. *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) (citation and quotation omitted). The "catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become a part of the contract." *Id*. A right established by an implied contract between a student and a university can be a property interest subject to constitutional protection, *id*., but to receive such protection, the student must first show that the implied contract establishes an entitlement to a tangible continuing benefit, *see Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 574 (1972). In order to establish this type of entitlement, the student must "point to an identifiable contractual promise that the [university] failed to honor." *Id*.; *Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1248 (Ind. App. Ct. 2007). Absent evidence of such a specific promise, the court will not participate in "second-guessing the professional judgment of the University faculty on academic matters." *Ross*, 957 F.2d at 415.

The district court correctly concluded that Bissessur failed to point to any specific promise that the University made which established that Bissessur might have had

an entitlement to a continuing education, or any other such entitlement. So, the court dismissed his claims. On appeal, Bissessur does not challenge the district court's solid analysis. Instead, he argues that the district court erred by dismissing his claims at the motion to dismiss stage. He maintains that his complaint contained enough information to state a claim for breach of implied contract (which established his property interest in a continuing education at the University), requiring the court to allow discovery to commence. He further alleges that the specific promises establishing his entitlement to a continuing education would be unearthed during discovery in various bulletins and flyers that had been posted around campus during Bissessur's tenure at the University.

Specifically, Bissessur argues that the following passage of his complaint, under our notice pleading standards, is enough to allow his claims to survive a motion to dismiss:

> Count II: Breach of Implied Contract
>
> 36. An implied contract existed between Bissessur and IU.
>
> 37. IU breached the implied contract that existed between Bissessur and IU.
>
> 38. IU's actions were arbitrary, capricious, and undertaken in bad faith.

This argument is without merit. Under the standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and affirmed in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), Bissessur's complaint fails to contain enough informa-

tion to state a legally cognizable claim. In *Twombly*, the Supreme Court held that a complaint stating only "bare legal conclusions," even under notice pleading standards, is not enough to survive a Rule 12(b)(6) motion. *Id*. at 547. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff has the obligation to provide the factual "grounds" of his entitlement to relief (more than "mere labels and conclusions"), and a "formulaic recitation of a cause of action's elements will not do." *Id*. The complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Id*. at 557; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. This said, in examining the facts and matching them up with the stated legal claims, we give "the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (citations omitted).

*Twombly* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008). In this case, Bissessur's complaint falls drastically short of providing the necessary factual details to

meet the *Twombly* standard. Aside from "Count II" above, which does nothing more than state that an implied contract existed and was breached, the complaint contains no mention of any entitlements Bissessur had as a result of his relationship with the University, or any promises that the University or its officials may have made to him that might have formed the basis of a contract, implied or otherwise. Nor does the complaint state what entitlement Bissessur has as a result of this purported contract. So, it does not contain sufficient facts to put the University on notice of the basis for Bissessur's implied contract claim. And because Bissessur's constitutional claims are derivative of the rights he alleges were promised to him as part of this implied contract, the necessary facts to support these claims are also absent from the complaint. Bissessur's argument that the exact details of the contract will become clear during discovery runs counter to the holding of *Twombly*, which dictates that the complaint itself must contain sufficient factual detail to describe the parameters of the contract before discovery may commence. Further, Bissessur's attempt to supplement the complaint in his briefing by stating that the details of the implied contract, which do not appear in his complaint, are contained in various unnamed academic bulletins is fruitless. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1103 (7th Cir. 1984) (holding that a complaint may not be amended by briefs in opposition to a motion to dismiss).

Our system operates on a notice pleading standard; *Twombly* and its progeny do not change this fact. *Cf. Smith*

*v. Duffey*, No. 08-2804, 2009 WL 2357872, at *4 (7th Cir. Aug. 3, 2009) (noting courts' overreliance on *Twombly*). A defendant is owed "fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under *Conley*, just as under *Twombly*, it is not enough to give a threadbare recitation of the elements of a claim without factual support. *See Tamayo*, 526 F.3d at 1082-83. A plaintiff may not escape dismissal on a contract claim, for example, by stating that he had a contract with the defendant, gave the defendant consideration, and the defendant breached the contract. What was the contract? The promises made? The consideration? The nature of the breach? Here, Bissessur wants us to believe that the University implicitly promised him that he had a right to a continuing education, and that he promised the University "something" in return, establishing an implied contract between the two parties. This implied contract, he argues, gave him an entitlement which is the basis for his due process and other constitutional claims. His complaint, however, fails to allege any facts that even remotely relate to this theory. It provides no notice for the basis of Bissessur's claims aside from a mere recitation of their elements. Among other things, it contains no facts concerning: (1) what, if any, promises the University made to Bissessur; (2) how these promises were communicated; (3) what Bissessur promised in return; or (4) how these promises created an implied contract. In sum, it leaves the University with no notice of what this "implied contact" is or how it supports Bissessur's constitutional claims. So, it fails here as it would have failed in 1957.

Allowing this case to proceed absent factual allegations that match the bare-bones recitation of the claims' elements would sanction a fishing expedition costing both parties, and the court, valuable time and resources.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.