In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1100

ERIC HLAVACEK,

*Plaintiff-Appellant,*

*v.*

ANN BOYLE, D.D.S., DEAN OF THE SOUTHERN ILLINOIS
UNIVERSITY SCHOOL OF DENTAL MEDICINE,
in her individual and official capacities, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:10-cv-00087-GPM-PMF—**G. Patrick Murphy**, *Judge.*

ARGUED SEPTEMBER 16, 2011—DECIDED DECEMBER 6, 2011

Before EASTERBROOK, *Chief Judge,* and WOOD and
TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* Eric Hlavacek was hoping to
become a dentist, but he was not able to maintain a sat-
isfactory academic record at the Southern Illinois
University School of Dental Medicine (SIU), which he
attended for five semesters. Over that time, he failed

several courses, including some that were a required part of his course of study. As a result, SIU dismissed Hlavacek for poor academic performance. After unsuccessfully asking various school committees and administrators to overturn this decision, Hlavacek filed a complaint alleging First Amendment, equal protection, and procedural due process violations. The district court found no merit in any of these theories and dismissed the action.

On appeal, Hlavacek argues only that the district court erred in rejecting his procedural due process claim. As our more complete account of the facts demonstrates, however, Hlavacek received ample process, and so we affirm.

## I

Hlavacek enrolled in SIU's four-year dental medicine program in the Fall of 2005. In his first semester, he failed Neuroanatomy, a required course. As a result, SIU placed him on academic probation for the Spring 2006 semester and gave him the opportunity to retake the course. Unfortunately, he failed the course the second time around, too. After re-enrolling and restarting his course of study in the Fall of 2006, Hlavacek passed his classes and was notified that he was in good academic standing.

During the Spring 2007 semester, Hlavacek was informed that the entire first-year class, of which he was still a part, would be required to retake two examinations because of improprieties committed by the whole

class. Hlavacek passed the required reexaminations, but he failed a different class—Dental Materials. After taking what SIU called a remediation examination, Hlavacek passed the latter course.

In Fall 2007, Hlavacek's performance went downhill, as he failed three additional courses. SIU allowed him to retake the examination in one of those classes, but he failed the second time around. As a result, the school placed him on academic probation. In the middle of the Spring 2008 semester, however, Hlavacek received a letter informing him that he was being dismissed from SIU for unsatisfactory academic performance.

Accompanied by a faculty representative, Hlavacek challenged his dismissal at a hearing held on March 5, 2008. After hearing Hlavacek's arguments and evidence, the panel at the hearing affirmed the school's action. Hlavacek was notified of this decision by a letter dated March 12, 2008. The March 12 letter contained two errors. First, it incorrectly stated that Hlavacek was on academic probation during the Spring 2007 semester. In fact, Hlavacek had been on probation during the Spring 2006 and Spring 2008 semesters, but not during the Spring of 2007. Second, it incorrectly stated that Hlavacek's hearing had been held on July 9, 2007.

Believing that he was dismissed on the basis of a non-existent July 9, 2007 hearing, Hlavacek sought clarification from the school. SIU recognized its error and provided Hlavacek with documents showing that no such hearing had been held on July 9, 2007. After receiving this information, Hlavacek personally appeared

before an appeals committee to seek review of the decision reported in the March 12 letter. The appeals committee also affirmed his academic dismissal. In addition, Hlavacek pursued several other avenues of relief. After his first hearing, he filed a grievance with SIU's Office of Institutional Compliance. Hlavacek also sought review of the decision to dismiss him through the Provost, the Chancellor, the Board of Trustees, and, finally, the President. Each appeal or petition was denied.

In February 2010, Hlavacek filed a complaint in the District Court for the Southern District of Illinois, alleging that SIU violated his First Amendment rights, his rights under the Equal Protection Clause, and his rights to procedural due process. The district court dismissed all of Hlavacek's claims on SIU's motion under Federal Rule of Civil Procedure 12(b)(6). As we noted before, Hlavacek has limited his appeal to the due process argument.

## II

The discussion that follows gives Hlavecek the benefit of the doubt, in keeping with the governing standard of review for dismissals under Rule 12(b)(6). See *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In any event, the course of events does not appear to be in serious dispute; the question is instead what legal consequences, if any, flow from those events.

In order to prove that SIU violated his rights under the Due Process Clause of the Fourteenth Amendment,

Hlavacek must show that it deprived him of a cognizable property interest and that it failed to give him whatever process was due for that particular deprivation. *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003). We can assume, without deciding, that Hlavacek had a protectable interest in continuing his graduate education. That narrows the case to an evaluation of the process that SIU provided in connection with its decision to dismiss him from the dental program.

When considering cases that originate in an educational institution, the law distinguishes between academic dismissals and disciplinary dismissals. *Fenje v. Feld*, 398 F.3d 620, 624 (7th Cir. 2005) (citing *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89-90 (1978)). Dismissals for poor academic performance "require no hearing at all." *Martin v. Helstad*, 699 F.2d 387, 391 (7th Cir. 1983). "[I]t is sufficient that the student was informed of the nature of the faculty's dissatisfaction and the ultimate decision to dismiss was 'careful and deliberate.'" *Fenje*, 398 F.3d at 626 (quoting *Horowitz*, 435 U.S. at 85). It would be difficult to imagine a different standard: how could federal judges second-guess the judgment of the dental faculty (or the engineering faculty, or the art history faculty, for that matter) on the question of academic competence?

Hlavacek had ample notice of the SIU faculty's dissatisfaction with his academic performance. He knew that he was on academic probation for the Spring 2006 semester, and that the faculty had already asked him once to restart his course of study. Notwithstanding that second

chance, Hlavacek received another set of failing grades. This led to another round of probation, which should have alerted him to the fact that he was on thin ice. It could not have been a surprise when he was told in writing that the basis for his dismissal was his failing grades.

SIU did not reach that decision precipitously. Despite Hlavacek's poor academic track record, the dental school gave him several opportunities to bring his performance up to snuff. After failing Neuroanatomy, SIU allowed him to retake the course. After failing Neuroanatomy a second time, SIU permitted him to start over again from the beginning. After failing his Fixed Prosthodontics exam, he was given a remediation exam, but he also failed that. In short, even with several second chances, Hlavacek never met the expectations of the faculty.

After SIU decided to dismiss Hlavacek, he availed himself of several opportunities to appeal, which we have already catalogued. In all, we count seven appeals (or grievances) that he was entitled to present. None was successful, but that does not mean that SIU was not offering an ample range of procedures. This extensive process was more than enough to protect any constitutionally protected interest that Hlavacek may have had. Indeed, we do not wish to be understood as implying that SIU's procedures were anywhere near the floor of what the Constitution would tolerate. Because his case is comfortably above that mark, we can safely leave for another day the discussion of the lower limit.

Hlavacek makes much of the fact that the March 12 letter erroneously referred to a hearing on July 9, 2007.

This is much ado about nothing. Hlavacek brought the error to SIU's attention, the university acknowledged it, and it provided Hlavacek with documentation establishing that his academic status was discussed only on March 5, 2008. The fact that one document contained an erroneous reference does not negate the substantial process provided by SIU (most of which took place after the error had been made and corrected).

In summary, the SIU faculty decided that Hlavacek had had enough "second" chances and that his performance did not meet the school's standards. It therefore dismissed him from its dental program. Its decision was affirmed by several appeals committees and university administrators. In light of the ample evidence that Hlavacek received "careful and deliberate" process, *Fenje*, 398 F.3d at 627, we decline to "participate in 'second-guessing the professional judgment of the University faculty on academic matters.'" *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 415 (7th Cir. 1992)). Hlavacek received all the process that he was due. We therefore AFFIRM the judgment of the district court.